```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/15/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Deborah Brown, *et al.*,

                Plaintiffs,

      –v–

City of New York,

                Defendant.

17-cv-9078 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

    In 2017, Plaintiffs filed a complaint in this action alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq. See* Dkt. No. 1. About two years later, after extensive discovery, the parties informed the Court that they had reached a settlement. *See* Dkt. No. 59. And in July 2019, the parties submitted a proposed a settlement agreement for the Court's approval and a letter explaining their views on the fairness of the settlement. *See* Dkt. No. 61. The agreement provides for a total settlement amount of $176,859.84, including attorney's fees and costs. Plaintiffs' counsel—two law firms—seeks fees and expenses in the amount of $92,000.00. For the following reasons, the Court approves the settlement agreement.

    **I.**      **THE PROPOSED SETTLEMENT**

    Plaintiffs in this case are 320 current and former employees of the New York City Department of Homeless Services (DHS). Plaintiffs worked for DHS as Peace Officers and Peace Sergeants from November 2014 to present. *See* Complaint, Dkt. No. 61, at ¶¶ 5–14. They allege that the City violated FLSA in three ways: (1) by failing to properly calculate their rate of

1

pay by failing to account for certain differentials and allowance payments, (2) by failing to properly pay overtime, and (3) by failing to pay overtime compensation in a timely manner. *Id.*[1]

Under the terms of the proposed settlement, the City will pay $176,859.84 to resolve this lawsuit, with the Plaintiffs receiving $25,896.48 as backpay and $58,963.36 as liquidated damages. *See* Dkt. No. 61, Ex. 1 (Settlement Agreement), ¶ 2.1. The backpay and liquidated damages portions of the settlement will be divided amongst Plaintiffs based upon their timekeeping and payroll data, which the City produced for each individual Plaintiff. These records were provided through June 2018, and Plaintiffs' counsel then extrapolated further data through February 2019 for those plaintiffs still working for DHS. Dkt. No. 61 at 2. Each plaintiff will receive a backpay payment equal to their damages on the regular rate claim and the straight time compensatory time claim. *Id.* Each plaintiff will also receive a liquidated damages payment equal to 100% of their damages on the late payment claim and 75% of their backpay damages. *Id.* Importantly, this settlement amount represents the plaintiffs' recovery under a 2.5-year statute of limitations.

Each Plaintiff was informed of the methodology for calculating damages and their recovery, based upon the City's timekeeping and payroll data, under the settlement agreement. Dkt. No. 61 at 3. Each Plaintiff has further had the opportunity to dispute their recovery amount, and review and dispute the recovery amounts of other Plaintiffs. And all opt-in Plaintiffs have been notified about the amount of attorneys' fees and expenses their counsel is seeking. *Id.*

---

[1] A related case alleging similar (though not identical) claims, *Campbell v. City of New York*, Case No. 16-cv-8719 (AJN), is currently pending before the Undersigned and has not settled. Unlike *Campbell*, this case does not include clams for unpaid pre-shift, post-shift, and meal-period overtime work.

2

## II. LEGAL STANDARD

In order to serve FLSA's purpose of ensuring "a fair day's pay for a fair day's work," settlements in FLSA cases must be approved by a court or by the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). A plaintiff's FLSA claims therefore cannot be dismissed with prejudice until the Court determines that the settlement is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A "fair and reasonable" settlement is one that "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13-CV-7002 (KMW), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014) (internal quotation marks omitted).

In determining whether the proposed settlement is fair and reasonable, courts "consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. The Proposed Settlement is Reasonable

The Court finds that the total settlement amount is reasonable. As a preliminary matter, there is a "strong presumption in favor of finding a settlement fair" in FLSA cases like this one, as courts are generally "not in as good a position as the parties to determine the reasonableness

3

of a FLSA settlement." *Souza v. 65 St. Marks Bistro*, No. 15 Civ. 327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (internal citation omitted); *see also Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

In considering the settlement's fairness, the Court turns first to Plaintiffs' potential range of recovery. *See Wolinsky*, 900 F. Supp. 2d at 335–36; Heiloo v. Fruitco Corp., 2019 WL 5485205 at *1 (S.D.N.Y. Oct. 25, 2019). Here, Plaintiffs allege they were entitled to a full recovery of $108,712.35. Dkt. No. 61 at 4. Given that the settlement agreement provides them with about $85,000, *id.*, this factor cuts in favor of approval. Indeed, courts in this District regularly recognize settlement recoveries in this range as reasonable. *See, e.g., Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515 (RA), 2017 WL 1857256 at *2 (S.D.N.Y. May 5, 2017) (approving a settlement amount of approximately 61% of maximum recovery); *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at 21 (S.D.N.Y. Dec. 14, 2015) (approving a settlement of approximate 25% of maximum recovery).

The Court next considers the extent to which settlement enables the parties to avoid anticipated burdens and expenses of litigation, and the litigation risks faced by the parties in proceeding further. *Wolsinky*, 900 F. Supp. 2d at 335–36; *Strauss v. Little Fish Corp.*, No. 19-CV-10158 (LJL), 2020 WL 4041511, at *3 (S.D.N.Y. July 17, 2020). Plaintiffs allege that they are entitled to backpay and liquidated damages on their claims that the City failed to include meal allowances or shift differentials in the regular rate of pay, failed to provide compensatory time for hours worked over 40 at a time-and-one-a-half rate, and failed to provide prompt overtime compensation. The City however strenuously denies these allegations. Dkt. No. 61 at 4. And the parties vigorously contest a crucial variable in Plaintiffs' recovery: the willfulness of the City's purported FLSA violations. *Id.* Indeed, if the City were to prevail on its good-faith

4

defense at trial, it could avoid the imposition of liquidated damages and lower the applicable statute of limitations from three years to just two years, drastically reducing Plaintiffs' potential recovery. *See* 29 U.S.C. § 255(a). As Plaintiffs correctly note, therefore, a substantial percentage of their potential verdict at trial would depend on if they could prove, by a preponderance of the evidence, that the City *willfully* violated the wage-and-hour laws—no small feat. *Id.* Proceeding to trial thus presented litigation risk to both sides.

At this stage of the litigation, following some discovery and extensive negotiations, the parties' agreement to settle the case for plaintiffs' full backpay on the regular rate and compensatory time claims under a 2.5-year statute of limitations, as well as full liquidated damages on the late-payment claim and 75% liquidated damages on the backpay to be awarded, for a total amount of $84,859.84, is a fair compromise given these bona-fide disputes. *See Kopera v. Home Depot U.S.A., Inc.*, No. 09-cv-8337 (WHP), 2011 WL 13272403, at *1 (S.D.N.Y. June 24, 2011) ("A district court may approve a FLSA settlement between private litigants when the settlement is reached as a result of contested litigation to resolve bona fide disputes." (internal quotation marks omitted)); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08-cv-8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Moreover, proceeding forward with this case would have been a lengthy and expensive process. As the parties recognize, "[w]ithout this settlement, both parties would need to spend significant amounts of time, money and expense to undertake voluminous pre-trial briefing of summary judgment motions regarding liability issues, followed by a lengthy trial on damages in which defendant would argue that the case could not be tried using representative testimony

5

because the plaintiffs are not similarly situated." Dkt. No. 61 at 5.  Importantly, even if Plaintiffs continued litigating this case and ultimately prevailed at trial, they could end up in the same financial position as the settlement places them in—or worse.  *See id.* ("Given that the parties' agreement provides plaintiffs with a significant majority of the backpay and liquidated damages sought in this case, the plaintiffs would not be able to gain much more than the settlement provides through an expensive discovery, summary judgment, and trial process.").

Finally, there is nothing in the record discrediting the parties' joint representation that this settlement is the result of good faith, arms-length negotiations.  *Id.*  Similarly, nothing suggests that there was fraud or collusion used to obtain the settlement.  Specifically, the settlement amounts were calculated based upon the actual damages suffered by Plaintiffs during the recovery process, a fair and equitable method.  *See id.*  In sum, each *Wolinsky* factor suggests that the parties' settlement is fair and reasonable.  *See* Wolinksy, 900 F. Supp. 2d at 335.  The Court agrees, and concludes that the settlement is fair.

### B. Counsel's Proposed Fees and Costs are Reasonable

The Court next turns to fees and costs.  *See* 29 U.S.C. § 216(b); *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the Defendant, and costs of the action'").  In determining whether fees are reasonable, courts consider a range of non-exhaustive factors, such as the time and labor spent by counsel, the magnitude and complexity of the litigation, the risk of litigation; the quality of counsel's representation, and any public policy considerations.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Courts also employ the lodestar method to "cross-check"

the proposed fee structure. *See id.* (encouraging the practice of using the lodestar method as a "'cross check' on the reasonableness of the requested [fee]").

Here, the City has agreed to pay fees and expenses in the amount of $92,000 to two law firms, Steele Elkin LLP and Spivak Lipton LLP. Of this amount, $7,691.61 represents expenses incurred by plaintiffs' counsel. Dkt. No. 61 at 7. In support of this fee award, counsel has submitted contemporaneous, detailed billing records from both law firms. *See* Dkt. No. 61. The Court notes at the outset that counsel's proposed fees and costs are greater than the recovery of the Plaintiffs themselves. Though this fact is relevant, it does not alone warrant striking down the fee structure as reasonable. To the contrary, it is well-established in this circuit that "[i]n FLSA cases the attorney's fees need not be proportional to the damages plaintiffs recover, because the award of attorney's fees in such cases encourages the vindication of Congressionally identified policies and rights." *Merino v. Beverage Plus Am. Corp.*, 2012 WL 4468182, *1 (S.D.N.Y. Sept. 25, 2012); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511–12 (S.D.N.Y. 2011) ("While the requested attorneys' fees exceed Plaintiffs' own recovery . . . that is no matter. In FLSA cases . . . the attorneys' fees need not be proportional to the damages Plaintiffs recover."); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F.Supp.2d 507, 512 (S.D.N.Y. 2010) ("The courts have rejected a *per se* proportionality rule, i.e., proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved.").

In considering the reasonableness of this proposed fee, the Court calculates the lodestar. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (encouraging the practice of using the lodestar method as a "'cross check' on the reasonableness of the requested percentage"). The lodestar amount is the presumptively reasonable fee—"the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Gaia House*

7

*Mezz LLC v. State Street Bank & Trust Co.*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ) (internal quotation marks omitted).

Plaintiffs contend that the lodestar amount is $160,230. Ricksecker Declaration, Dkt. No. 61-5, ¶ 13. In other words, counsel's proposed fee under the settlement—of $84,308.39—represents a 48% reduction to their proposed lodestar. *Id.* In calculating this lodestar, Plaintiffs "used the following hourly billing rates: $540/550 for partner Gregory K. McGillivary; $350/400/405 for partner David Ricksecker; $250/285/290 for associates Sarah M. Block and Hillary D. LeBeau; and $200 an hour for paralegals who worked on the case." *Id.* ¶ 14; *see also* Pordy Declaration, Dkt. No. 61-6, ¶ 13 (similar rate for co-counsel). Given counsel's extensive experience litigating wage-and-hour claims and the prevalent rates for partners and associates of like experience in this District, this Court agrees with many other courts in concluding that the hourly rates of these particular attorneys are reasonable. *See id.* ¶¶ 18–24 (summarizing experience of some attorneys who worked on this matter); Pordy Declaration ¶¶ 2–10 (same); *see, e.g., Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (holding that rate of $550 per hour in FLSA case was reasonable); *Kearse v. City of New York*, 17-cv-9982 (JMF), Dkt. No. 41; *Lynch v. City of New York*, 16-cv-05677 (KBF), Dkt. No. 133 (approving fees in an FLSA actions at the same rates as in this case); *Lewis v. New York City Housing Authority*, No. 17-cv-294 (S.D.N.Y.) (PKC), Dkt. Nos. 87, 88 (approving fees in an FLSA action at 1.7 times the lodestar, calculated at rates of $455 to $540 for senior partners).

Additionally, the Court determines that the number of hours spent by counsel was reasonable, and upon careful examination of both firms' billing records, does not include repetitive or otherwise excessive billing. *Cf. Guallpa v. N.Y. Pro Signs Inc.*, No. 11-cv-3133

8

(LGS) (FM), 2014 WL 2200393, at *11 (S.D.N.Y. May 27, 2014), *report and recommendation adopted sub nom. Guallpa v. NY Pro Signs Inc.*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014). This is especially true in light of the complexity of this matter. *Cf. id.* (reducing fee in part because the case was "relatively straightforward."). The Court thus accepts counsel's proposed figure of $160,230 as the lodestar.

Where the lodestar is greater than the amount sought for fees—especially significantly greater, as is the case here—courts generally approve the settlement agreement's fee structure. *See, e.g.*, *Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-cv-9632 (AJN), 2019 WL 330631, at *3 (S.D.N.Y. Jan. 25, 2019) ("The true lodestar amount is therefore greater than the fee award contained in the settlement agreement. As a result, the Court does not disturb the calculation of attorneys' fees."). Given the lodestar calculation, the complexity and length of this matter (including counsel's work in analyzing extensive payroll data to calculate each Plaintiffs' damages), the quality of representation, and the risks of this litigation (including the upfront risk counsel took in taking this case), the Court approves the proposed attorneys' fees. The Court also includes that the proposed costs are reasonable. *See Collado v. Donnycarney Rest. L.L.C.*, No. 14-cv-3899 (GBD), 2015 WL 4737917, at *14 (S.D.N.Y. Aug. 10, 2015) (collecting cases). The Court thus approves the settlement agreement as fair and reasonable.

## IV.    CONCLUSION

For the reasons stated above, the Court approves the settlement agreement in full. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: October 15, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge